SONJA D. KERR (AK BAR NO. 0409051)
MEG K. ALLISON (AK BAR NO. 0511091)
DISABILITY LAW CENTER OF ALASKA
3330 Arctic Boulevard, Suite 103
Anchorage, Alaska 99503
Telephone:   (800) 478-1234/907-565-1002
Email:       akpa@dlcak.org

# UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| C.W., by and through his guardian, J.M.,<br>　　　　Plaintiffs,<br><br>v.<br><br>Anchorage School District,<br>　　　　Defendant. | Case No. _____<br><br>Complaint and Appeal |

## JURISDICTION

1.　This Court has subject matter jurisdiction pursuant to a federal law, the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, et. seq., and specifically, §1403, §1415, §1415(i)(2), and 28 U.S.C. §1331 and §1343.

2.　Plaintiffs have properly exhausted administrative procedures set forth in the Individuals with Disabilities Education Act, 20 U.S.C. §1400, et seq., and are challenging part of an administrative decision arising out of those procedures as contrary to the IDEA and thus have the right to bring this civil action as an aggrieved party. 20 U.S.C. §1415(i)(2).

3.　Venue is proper in this Court under 28 U.S.C. §1391(b) and LR 3.3. Defendant Anchorage School District ("District") is within the District of Alaska and all of the events giving rise to this action occurred in the District of Alaska.

## PARTIES

4. C.W. is an eighteen year old student (DOB 02/01/1987) with a learning disability and is therefore entitled to all of the procedural rights and protections of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, et seq. C.W. lives with J.M., who served as his legal guardian until he reached the age of majority. C.W. has since executed a power of attorney to J.M. for all educational decisions, including legal decisions. J.M. and C.W. live within the residential boundaries of the Anchorage School District. J.M. has attended numerous IEP and other meetings for C.W. during the time he has been enrolled in the District and continues to do so.

5. Anchorage School District ("District") is the local educational agency pursuant to the IDEA responsible to ensure that C.W. is provided a free appropriate public education pursuant to the IDEA because C.W. has during all relevant time periods and presently lives within the residential boundaries of the District. 20 U.S.C. §1401(15).

## FACTUAL ALLEGATIONS

6. C.W., who is an Athabascan Indian, is in his second senior year at East High School in the District. Despite average to above average intelligence, C.W. has difficulty in school because he has a learning disability. There is no dispute between the parties that C.W. has a learning disability and is qualified for services pursuant to the Individuals with Disabilities Education Act. C.W. is entitled to all of the procedures, rights and protections of the Individuals with Disabilities Education Act, 20 U.S.C. 1400, et seq because he is qualified as a student eligible to receive special education and related services pursuant to the IDEA.

7. The District has failed to provide C.W. with the individualized program of

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002    Fax 907-565-1000
1-800-478-1234

education based upon C.W.'s unique educational needs. 20 U.S.C. §1400(d)(1)(A); §1401(11); §1414(d), (f). The District has failed to ensure that J.M. was an equal participant in the process of any decision concerning C.W.'s program of education. 20 U.S.C. §1414, §1415. The District has violated certain procedural requirements which have denied J.M. a free appropriate public education as required by the Individuals with Disabilities Education Act. Notably, the District has relied upon its existing delivery system or administrative convenience to dictate C.W.'s program of education contrary to the Individuals with Disabilities Education Act, specifically failing to develop for him an individualized program to meet his severe reading, writing and math difficulties so as to enable him to improve substantially in those areas, to graduate and to pass the HSGQE. The District has substantially essentially failed to provide C.W. with a transition plan that meets his needs, including academic needs as well as postsecondary and vocational needs, all of which are to be part of a coordinated set of activities called "transition services. " Alaska has adopted both statutes and regulations to allow procedures and actions necessary to comply with the requirements of the federal law, and the District has not complied with those procedures as well.

8.  C.W. lived in Nenana when he was first deemed eligible for special education services. J.M. worked in the school as an aide which is where he initially came to know C.W. While in Nenana, C.W.'s IEP called for him to receive 20 hours of special education and related services. C.W. took the High School Graduation Qualifying Exam (HSGQE) while in Nenana, but did not pass any portion of the HSGQE at that time. At a later point, C.W.'s parents gave permission for C.W. to live with J.M. and they eventually moved to Anchorage.

9. In the fall of 2003, C.W. entered service within the District from the Nenana School District, enrolling as an eleventh grader at East High School within the District. The District did not have a copy of the Nenana IEP but it indicated that the IEP was accepted. This IEP required that C.W. receive 20 hours of special education services per week.

10. At no time during the 2003-2004 school year did C.W. receive 20 hours of special education services. Instead, at the time of C.W.'s enrollment in the District, the District apparently amended C.W.'s IEP to reduce his special education services from 20 hours per week to just ½ hour (30 minutes) of special education per week. J.M., C.W.'s guardian, was unaware of any reduction of C.W.'s service hours under the IEP. J.M. thought the ½ hour of special education per week would be added to the 20 hours of special education per week that C.W. received at Nenana.

11. C.W. continued to have difficulty passing the HSGQE due to his reading, writing and math difficulties. He failed all portions of the test in the fall of 2003 and February of 2004.

12. When evaluated as an eleventh grader, in the spring of 2004, C.W.'s reading level was at grade 3.7, his written expression was at grade 6.4 and his written language was at grade 5.1.

13. On April 2, 2004 an IEP meeting was held. Parental concerns included that C.W. be on track for graduation, pass the HSGQE and get study skills help. C.W. continued to qualify as a student eligible for special education with a learning disability in the areas of reading and written language. The team was aware that C.W. had not passed any portion of the HSGQE at that time. The IEP developed at this time included 10

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
907-565-1002   Fax 907-565-1000
1-800-478-1234

hours of special education services.

14.  Transition services are required by the IDEA and must be a coordinated set of activities designed to ensure that the child will be successfully transitioned to adulthood from high school. 20 U.S.C. 1414(d)(1)(A)(VIII)(aa); 34 CFR 300.347(b).

15.  C.W. never received any transition services from the District. C.W. was entitled to begin to receive transition services as early as age 14 (February 2001), and at a minimum transition services should have begun in earnest at age 16 (February 2003). J.M. was not well informed and did not understand that C.W. was entitled to transition services as a student eligible pursuant to the Individuals with Disabilities Education act.

16.  In the fall of 2004, J.M. requested that the District provide C.W. with tutoring to assist him in achieving his educational goal of passing the HSGQE in all areas. The District declined and did not develop any individualized program for C.W. as to the HSGQE. Instead, the District simply offered programs currently available within the District, some of which had already been unsuccessful for C.W. and others which were inappropriate to C.W.'s individual unique needs.

17.  On September 20, 2004, J.M. wrote the District and requested private 1:1 tutoring for C.W., in such basic skills as reading and possibly math and requested that the District pay for same. He placed the District on notice, at that time that C.W. would have to access those services privately to meet his educational needs and that he would seek reimbursement from the District for same if necessary. An IEP meeting was held on October 4, 2004, but J.M. was told an administrator, who was not present, would have to decide whether C.W. received private tutoring. On November 10, 2004, an administrator denied the request for tutoring. Nearly a month later, on December 14,

2004, and <u>after</u> the administrator had already denied the request for private tutoring, an IEP meeting was held at which the District proposed C.W. enroll in pre-existing options for assistance to improve his reading, writing and math and to hopefully increase his ability to pass the HSGQE. J.M. declined the options as inappropriate. Meanwhile, C.W. had already begun tutoring with Sylvan Learning, with evaluation taking place on October 30, 2004 and starting classes with Sylvan the 2nd or 3rd week in November, 2004.

18.     C.W. did not pass the HSGQE despite taking two administrations of it during the 2004-2005 school year.

19.     C.W. faithfully attended Sylvan Learning Center for tutoring from November of 2004 through 2005 for approximately 2 hours per week. His reading skills increased from approximately 3rd grade to approximately 7th grade during that time.

20.     Following informal efforts to resolve and including mediation, in July of 2005, J.M. requested a special education due process hearing. **Ex. A.**

21.     Following preliminary matters, a special education due process hearing was held on October 13 and 14, 2005 before Independent Hearing Officer, Sheila Gallagher. This is known as DEED hearing No. 06-02. C.W. and J.M. listed three allegations in the hearing request: 1) the District has failed to provide C.W. with an education designed to result in meaningful progress, including passage of the HSGQE, therefore, denying him a free and appropriate public education; 2) the District has failed to ensure that C.W. has a meaningful transition services plan, including passage of the HSGQE; and 3) the District has failed to include the private provider, Sylvan, at any IEP meeting so that information could be shared and has denied the parent full participation in the

DISABILITY LAW CENTER OF ALASKA
3330 Arctic Blvd., Suite 103
Anchorage, AK  99503
907-565-1002    Fax 907-565-1000
1-800-478-1234

formulation of any IEP. C.W. and J.M. requested as remedies that the District be ordered to add private tutoring services from Sylvan Center to C.W.'s IEP, reimburse J.M. for private tutoring services already provided by J.M., pay for additional testing by Sylvan in math and writing and award other compensatory education as appropriate. **Ex. A.**

22. Following the evidentiary hearing, which included both oral testimony, receipt of documentary evidence and post-hearing briefing, on December 13, 2005, IHO Gallagher issued an order, which was transmitted, to the parties on December 14, 2005. **Ex. B.**

23. IHO Gallagher found that the District had provided C.W. with a free appropriate public education, in part, but also found that the District did not appropriately evaluate C.W. with regard to transition services and that the failure of the District to provide C.W. with a transition plan was a denial of FAPE. Ex. B., pg. 16-19, Finding H. IHO Gallagher found that the District did not have an IEP with measurable goals for C.W. and did not comply with procedures to identify staff responsible for teaching C.W. and amounts of services provided. Notwithstanding these findings, the IHO issued no remedy to C.W., except to require that the District re-evaluate C.W. in reading, writing and math, evaluate other transition areas (interests and aptitudes) and develop a new IEP with measurable goals.

24. The IHO erroneously denied reimbursement to J.M. for the costs of the private Sylvan tutoring on the basis that the District provided C.W. with the opportunity for a free appropriate public education and C.W. failed to utilize the opportunities offered by the District before seeking the private services. Ex. B, pg. 10-13, Finding E

25. The IHO recognized the remedy of compensatory education but did not award C.W. any stating, "the issue of compensatory education is reserved" pending the outcome of the IEP team. See, Ex. B, pg. 22.

26. The IHO held that the decision she was issuing was a "final decision" subject to appeal to this or another court of competent jurisdiction. See, Ex. B, pg. 22.

27. On January 5, 2005, at the request of the IHO and the ASD, the parties' counsel convened with the IHO. Prior to the meeting, DLC forwarded a letter to the IHO indicating that it appeared she lacked any jurisdiction to reconvene the parties and took that same position at the meeting given the December 14, 2005 order. No court reporter or transcript was made of the meeting on January 5, 2005.

28. The Plaintiffs are aggrieved, in part, by and appeal the IHO's determination and findings, in part. Specifically, Plaintiffs are aggrieved as the IHO erred in finding that C.W. was provided a free appropriate public education in any way without a transition plan, and an IEP with measurable goals and objectives, and the IHO erred in not awarding C.W. any meaningful remedy for the District's denial of a free appropriate public education.

## CLAIM FOR RELIEF

(Violation of the Individuals with Disabilities Education Act, 20 U.S.C. §1400, et seq.)

29. Plaintiffs incorporate by reference herein the allegations in paragraphs 1 through 28 inclusive.

30. Defendant District has violated the IDEA and Alaska law by failing to determine C.W.'s need for reading, writing and math tutoring and other transition programming on an individual basis, and based upon his unique needs and through the requisite

procedures and utilizing the IEP team process as required by the IDEA. 20 U.S.C. §1400(d)(1)(A); §1401(11); §1414(d), (f); §1415; 34 C.F.R. Chapter 300, including Appendix A; and A.S. 14.30.180, et seq., A.S. 14.30.278 (requiring an individualized education program), and regulations at 4 AAC 52.090, et seq., and see 4 AAC 52.140 (requiring an individualized education program to be developed by a team of people, including school staff and parents). Such violation has denied C.W. a free appropriate public education as contrary to 20 U.S.C. §1401(8) which requires that the District provide a free appropriate public education that is without charge to the family, meets the standards of the state, includes an appropriate school and is provided in conformity with an individualized education program. The District has denied C.W. an IEP with measurable goals and a transition plan, and the IHO has failed to award appropriate relief, including reimbursement for past costs of tutoring, and including of tutoring in C.W.'s IEP as part of a meaningful transition plan and or as compensatory education.

## RELIEF REQUESTED

WHEREFORE, pursuant to this Court's authority and jurisdiction under §20 U.S.C. §1415, and specifically §1415(i)(3), DLC hereby requests that the Court:

1. Accept jurisdiction of this complaint.

2. Reverse the IHO's determination and find that J.M. is entitled to reimbursement for private tutoring in the amount of approximately $1,086 for Sylvan testing, $17,384.59 for tutoring loan plus interest for tutoring provided by Sylvan Learning Center to C.W. during the timeframe of 2004-2005, during which time C.W. had no transition services plan in place and no measurable goals on his IEP.

3. Order compensatory education services in amount equal to the 20 hours per

week not provided during the 2003-2004 school year and equal to the amount of private tutoring provided by the parent during the 2004-2005 school year or in the amount equal to the parent had to expend for the private tutoring.

4. Attorney fees for the underlying due process hearing, the drafting of this complaint, and reasonable attorneys' fees and costs in the pursuit of this action.

5. Any and all other appropriate relief consistent with the IDEA.

All other appropriate relief consistent with the IDEA.

Dated: January 11, 2006

*Sonja D. Kerr*
Sonja D. Kerr, Bar No. 0409051
Disability Law Center of Alaska
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
Telephone: 907-565-1002
Fax: 907-565-1000
skerr@dlcak.org

*Meg Allison*
Meg K. Allison, Bar No. 0511091
Disability Law Center of Alaska
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
Telephone: 907-565-1002
Fax: 907-565-1000
malison@dlcak.org

Certificate of Service

I hereby certify that on the 11th day of January, 2006, a copy of this Complaint was served electronically and by regular U.S. Mail on:
Brad Owens
Jermain, Dunnagan & Owens
3000 A Street, Suite 300
Anchorage, AK 99503

*Meg Allison*

C.W. v. ASD
Complaint and Appeal