Bradley D. Owens, Esq.
Raymond E. Goad, Jr., Esq.
Jermain, Dunnagan & Owens, P.C.
3000 A Street, Suite 300
Anchorage, AK  99503
Telephone:  (907) 563-8844
Facsimile:   (907) 563-7322

Counsel for Defendant

## UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| C.W., by and through his guardian, J.M., | ) ) ) |
| Plaintiffs | ) ) |
| vs. | ) ) |
| ANCHORAGE SCHOOL DISTRICT, | ) ) |
| Defendant | ) |

Case No. 3:06-cv-00009-JWS

### MEMORANDUM IN SUPPORT OF
### MOTION TO QUASH DEPOSITION AND FOR A PROTECTIVE ORDER

**I.     INTRODUCTION**

The Anchorage School District ("ASD"), by and through its attorneys Jermain, Dunnagan & Owens, P.C., has moved this court for an order quashing the Notice of Deposition of a non-party witness in this matter, Kimberly Sterne.  The ASD also seeks a protective order prohibiting the discovery of various documents ostensibly in the possession of the ASD and interrogatory responses propounded upon the ASD.

**II.     FACTS**

A brief factual background of the case is helpful to understand the lack of justification and necessity of the discovery served in this matter.

### A.  Factual Summary

C.W. was a student with a disability for which he required special education and related services to access his education, which were offered to him under an individualized education plan ("IEP") developed for C.W. by an appropriate IEP team.  C.W. attended East Anchorage High School.  C.W.'s guardian J.M. filed a request for a due process hearing claiming that C.W. was denied a free appropriate public education ("FAPE").  C.W. alleged that ASD failed to provide C.W. with an education designed to result in meaningful progress, specifically the passage of the High School Graduation Qualifying Exam ("HSGQE"), and that the ASD failed to provide a meaningful transition services plan, including passage of the HSGQE.

A due process hearing was held on October 13-14, 2005.  At the hearing, several witnesses testified at length about the issues attendant to the hearing.  Among the witnesses J.M. called and extensively examined at the hearing were: Kimberly Sterne, C.W.'s special education teacher, Cindy Anderson, the ASD director of secondary special education, Jan Dolan, special education department head at East Anchorage High School, and Greg Hartlieb, special education teacher and vocational coordinator at East.  J.M. also extensively cross-examined other witnesses including Sam Spinella, assistant principal for curriculum at East High School and Mary DeHoux, a school psychologist at East.

The Hearing Officer issued a decision on December 13, 2005.  As to the HSGQE, the Hearing Officer found that the ASD provided the opportunity for FAPE and that C.W. failed to utilize the opportunities offered by the ASD.  As a result, C.W.'s requested remedy for reimbursement for private tutoring services was denied.  Regarding transition services, the hearing officer found that the ASD denied C.W. FAPE because it failed to adequately evaluate C.W.'s transition from high school and failed to provide a transition plan which met IDEA and

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

State requirements. As a remedy, the hearing officer ordered C.W.'s IEP team to meet and consider transition planning for C.W. The hearing officer ordered either a new or amended IEP that provided measurable goals for transition. The hearing officer ordered a more formal assessment of C.W.'s interests and aptitudes in planning C.W.'s transition for post-school life.

### B.   The Deposition Notice and Propounded Discovery Requests.

In accord with this court's minute order dated February 21, 2006, the parties planning meeting occurred on March 14, 2006. The scheduling and planning conference report dated March 21, 2006 reflects the positions of the parties regarding discovery in this matter. The plaintiff believes that he can conduct discovery in this case without any consideration by the court of the need or justification for the discovery. The ASD's position, as reflected in the report, is that the court, in its discretion, should (prior to taking additional discovery) first rule on whether additional discovery is justified and necessary in order to determine whether the discovery the plaintiff seeks is supplemental or whether it would change the character of the case from one of review to a trial de novo.[1]

In a subsequent joint report to the court dated April 20, 2006, the parties agreed that the plaintiff would serve any discovery requests by May 15, 2006. The ASD then would forward any objections to the discovery by May 25, 2006. The parties also agreed that the proposed discovery and objections were to be provided to the court by June 2, 2006. The plaintiff failed to propound discovery by May 15, 2006 and on June 2, 2006 requested an extension of the deadline to June 16, 2006. On June 15, 2006 plaintiff propounded request for production of documents and interrogatories upon defendant and a deposition notice for Kimberly Sterne set on for June 27, 2006. No subpoena accompanied the deposition notice. The ASD forwarded the proposed

---

[1] The same positions are reflected in plaintiff's status report dated June 20, 2006 and in the ASD's response dated June 21, 2006.

**Motion to Quash Deposition and For a Protective Order**  Page 3 of 9
*C.W. v. ASD*, Case No. 3:06-cv-00009-JWS

discovery requests and its objections to the court and plaintiff on June 21, 2006 in its response to plaintiff's report to the court dated June 20, 2006.

### III. ARGUMENT

#### A. The Court's Consideration of the Justification and Need for Additional Discovery Prior to Answering the Discovery enables the Court to Properly Avoid a Trial De Novo and Comports with the Construction of the IDEA.

In an appeal of an administrative decision under the Individuals with Disabilities Education Act ("IDEA"), the court's consideration of whether additional discovery is needed and justified comports with the standard of review in IDEA appeals, the requirement that the court determine the quantum of deference to be given the administrative findings. In addition consideration of the issue prior to taking discovery allows the court to judge whether proposed discovery is indeed supplemental or whether plaintiff is engaged in a fishing expedition and thereby encourages speedy resolution of such appeals, as well as promoting judicial economy and efficiency.

The IDEA provides that the "court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(A). The Ninth Circuit has adopted a construction of the word "additional" in the statutory provision to mean supplemental.[2] *Ojai Unified School Dist. V. Jackson*, 4 F.3d 1467, 1471 (9th Cir. 1993) (quoting *Town of Burlington v. Department of*

---

[2] As noted by the *Ojai* court, "the reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing. The starting point for determining what additional evidence should be received, however, is the record of the administrative proceeding. *Ojai Unified School Dist. V. Jackson*, 4 F.3d 1467, 1471 (9th Cir. 1993) (quoting *Town of Burlington v. Department of Education*, 736 F.2d 773, 790-791 (1st Cir. 1984), *aff'd*, 471 U.S. 359 (1985))

**Motion to Quash Deposition and For a Protective Order**   Page 4 of 9
*C.W. v. ASD*, Case No. 3:06-cv-00009-JWS

*Education*, 736 F.2d 773, 790-791 (1st Cir. 1984), *aff'd*, 471 U.S. 359 (1985)); *see also, Walker County Sch. Dist. V. Bennett*, 203 F.3d 1293 (11th Cir. 2003) (adopting same definition).

The court in *Ojai* also agreed with the First Circuit that the determination of what is additional evidence is within the discretion of the trial court "which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo." *Id.* The court went on to quote:

> A practicable approach, we believe, is that an administrative hearing witness is rebuttably presumed to be foreclosed from testifying at trial. [A motion may then be made to allow such a witness to testify within specified limits stating the justification for the testimony]. In ruling on motions for witnesses to testify, a court should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources.

*Id.* (quoting *Town of Burlington v. Department of Education*, 736 F.2d at 790-791 (1st Cir. 1984)). Ultimately, the Ninth Circuit adopted this standard for the admission of additional evidence. *See id.*

Although the *Ojai* court, unlike here, was considering the issue of the admission of additional evidence rather than taking discovery – the analysis has equal force in considering whether additional discovery should be allowed. In this case, the individual the plaintiff seeks to depose testified at length at the administrative hearing. The plaintiff could have asked anything he wished of Ms. Sterne at that time. The plaintiff offers no reason for the need or justification for additional discovery, including the deposition – there is no allegation that gaps in the administrative transcript exist, no allegation that any potential witness was unavailable, no assertion that the hearing officer improperly excluded evidence at the hearing or that the plaintiff is seeking discovery of matters that occurred subsequent to the hearing. Moreover, the interrogatories propounded upon the ASD are questions that could have been asked at the

administrative hearing – such as the training of witnesses on transition services, the exact location of where special education services were provided to C.W. and the like. Absent such justification, additional discovery is nothing more than a fishing expedition designed to turn this appeal into a trial de novo.[3]

In fact, trial courts have used this analytical framework to prohibit a party from taking discovery in IDEA appeals. *See Burks v. Bogalusa City Sch. Bd.*, 31 IDELR 1, 31 LRP 5720 (E.D. La. August 17, 1999) (attached as Exhibit A); *Peter G. v. Chicago Public Sch. Dist. No. 299*, 37 IDELR 215, 102 LRP 22242 (N.D. Ill. 2002) (attached as Exhibit B); *Lillibask v. Sergei*, 193 F.Supp.2d 503 (D. Conn. 2002) (attached as Exhibit C).

In *Burks*, the court prohibited plaintiffs from deposing witnesses, concluding that allowing such depositions would be inappropriate and unnecessary." In *Peter G.*, the court ruled that plaintiffs *discovery requests* "exceeded the extent of additional discovery this court allowed for the limited purpose of supplementing the administrative record." In *Lillibask*, the court recounted that, in a prior ruling in that case, it denied a motion to compel discovery on an issue that was not before the court in the case. Tellingly, the court reasoned that the IDEA "seeks to avoid a trial de novo by prohibiting witnesses from repeating or embellishing previously rendered testimony." 193 F.Supp.2d at 507. The court went on, stating that "to make such evidence admissible would suggest it is discoverable. 'A lenient standard for additional evidence

---

[3] In addition, many of the plaintiff's requests do not appear reasonably calculated to lead to the discovery of admissible evidence. For example, plaintiff requests documents concerning procedures for transition evaluations of special education students. The hearing officer found that the ASD failed to provide appropriate transition evaluation. Plaintiff prevailed on that issue in that the hearing officer determined that the ASD failed to conduct a proper transition evaluation and ordered an IEP team meeting to do so. The ASD has not appealed that determination. It is difficult indeed to see how documents related to an issue on which plaintiff prevailed can lead to the discovery of admissible evidence on a disputed issue in this appeal. Accordingly, under Civil Rule 26(b)(1) the plaintiff should not be able to obtain such discovery.

**Motion to Quash Deposition and For a Protective Order**  Page 6 of 9
*C.W. v. ASD*, Case No. 3:06-cv-00009-JWS

would have the consequence of making the whole IDEA process more time consuming, as parties use the federal court proceeding to patch up holes in their administrative case." *Id.* (quoting *Springer v. Fairfax County Sch. Bd.,* 134 F.3d 659, 667 (4th Cir. 1998)). Finally, the court opined that "to permit ongoing and lengthy discovery . . . would increase the litigious nature of proceedings and undermine expediency, contrary to the command to give 'due weight' to the findings of the hearing officer . . . by diluting the evidence before the hearing officer. *Id.* (citing *Bd. of Education v. Rowley,* 456 U.S. 176 (1982); *O'Toole v. Olathe Dist. Sch. Unified Sch. Dist. No. 223,* 963 F. Supp. 1000, 1015 (D. Kan. 1997)).

The important element in all these cases is that the court undertook consideration the question of whether additional discovery should be allowed – not simply whether once the discovery responses were served to admit such responses or depositions into evidence. This analytical approach serves the same purpose as those in determining admissibility – whether gaps in the administrative record exist, whether a witness is unavailable, whether evidence was improperly excluded at the administrative hearing and the like. This approach reduces litigiousness and encourages judicial economy and expediency. It also serves to prohibit discovery the purpose of which is designed to do nothing more than "patch up holes in [plaintiff's] administrative case." Accordingly, the court should determine whether the proposed discovery in this case is justified and necessary as supplemental to the administrative record. The plaintiff should demonstrate such justification and necessity of the evidence as supplemental prior to the ASD answering the discovery and prior to the deposition of Ms. Sterne.

**B.      The Request for Production and Interrogatories Violate the Discovery Termination.**

Despite the agreement between the parties concerning the deadline for the plaintiff to propound discovery upon the ASD, the discovery termination date agreed upon by the parties

**Motion to Quash Deposition and For a Protective Order**                                                     Page 7 of 9
*C.W. v. ASD,* Case No. 3:06-cv-00009-JWS

will have passed before the return date for the requests for production and interrogatories. All discovery must be *completed*, as opposed to simply requested or served, by a discovery termination date. *See Pratt v. Crist*, 1997 WL 206015 (9th Cir., April 24, 1997) ("The district court properly exercised its discretion in denying Pratt's discovery request as untimely. .... the district court reasonably concluded that, in order to meet the discovery deadline, Pratt should have tendered his request for documents at least thirty days before the discovery-completion deadline."); *Sofo v. Pan-American Life Ins. Co.*, 13 F.3d 239, 241 (7th Cir. 1994); *Gluck v. Ansett Australia Ltd.*, 204 F.R.D. 217, 219-20 (D.D.C.2001) (granting protective order against plaintiff's requests for admissions which were served a matter of days before the discovery deadline, where plaintiff neither sought an extension of the discovery deadline to allow the thirty days for defendant's responses nor moved to shorten defendant's response time); *Podlesnick v. Airborne Express, Inc.*, 94 F.R.D. 288, 292 (S.D. Ohio 1982) ("The discovery 'cut-off' deadline means that all discovery must be concluded, as opposed to simply requested by [that date]").[4]

The discovery cut off date agreed to by the parties is June 30, 2006. The plaintiff propounded discovery upon the ASD on June 16, 2006. Accordingly, any discovery responses (in the event that the court found the discovery to be justified and necessary) would be well after the June 30, 2006 deadline. Accordingly, the discovery should not be allowed.

---

[4] The Notice of deposition for Kimberly Sterne was not accompanied by a subpoena. Kim Sterne is not a party to this appeal. Accordingly, the Notice is improper and should be quashed for the additional reason that Kim Sterne is not a party. Discovery sought from a non-party, such as requested here, should take place pursuant to subpoena *See* Fed. R. Civ. P. 45.

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

IV.  **CONCLUSION**

For the reasons stated herein, the ASD's motion to quash the deposition of Kimberly Sterne and for a protective order prohibiting the discovery propounded upon the ASD should be granted.

DATED in Anchorage Alaska this 26th day of June, 2006.

JERMAIN, DUNNAGAN & OWENS, P.C.

/s/ Raymond E. Goad, Jr.
By: Bradley D. Owens
Jermain, Dunnagan & Owens, PC
3000 A Street, Suite 300
Anchorage, AK 99503
907- 563-8844
907-563-7322 (fax)
bradowens@jdolaw.com
Alaska Bar #7610122

Raymond E. Goad, Jr.
Jermain, Dunnagan & Owens, PC
3000 A Street, Suite 300
Anchorage, AK 99503
907- 563-8844
907-563-7322 (fax)
rgoad@jdolaw.com
Alaska Bar #0111062

Certificate of Service

I hereby certify that on this
26th day of June, 2006
I caused to be [ ] hand delivered;
[ ] mailed, US postage prepaid;
[ ] faxed and/or [x] e-mailed the
foregoing to:

Sonja D. Kerr
Disability Law Center of Alaska
3330 Arctic Blvd., Ste. 103
Anchorage, AK 99503

   /s/ Raymond E. Goad, Jr.