

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

# SPECIAL EDUCATION ALERT

A Publication of the Special Education Practice of
COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.

March 2005

We at Cole, Schotz, Meisel, Forman & Leonard, P.A. want to keep you advised of new developments in the area of special education law. To that end, we periodically publish the Special Education Alert whenever there is news of interest that we feel merits your attention. This particular issue is devoted to Individuals with Disabilities Education Improvement Act of 2004 which was signed into law on December 3, 2004. The provisions described below will go into effect on July 1, 2005.

In the interest of speed and efficiency, the Special Education Alert has been created as an e-newsletter. If you have received this through the mail but would like to receive the Special Education Alert via e-mail, please send your e-mail address to Christine Pomante at cpomante@coleschotz.com. We hope you find this issue useful. We welcome your comments, suggestions and ideas.

>Rebecca K. Spar, Esq.
>Cole, Schotz, Meisel, Forman & Leonard, P.A.
>rspar@coleschotz.com

EXHIBIT B
Page 1 of 9

# What You Need to Know About IDEA 2004

On Friday, November 19, 2004, after three years of negotiations, the House of Representatives and the Senate passed the Individuals with Disabilities Education Improvement Act of 2004 (IDEA 2004). The President signed the bill on December 3, 2004.

The House/Senate Conference Committee compromised between the Senate bill (S. 1248) and the House bill (H.R. 1350). Although some protections were lost, the final bill looked more like the Senate bill than the House bill which would have drastically cut back on the IDEA. The changes discussed here will go into effect on July 1, 2005.

**Selected Changes**

I have summarized below those changes which may have the most immediate impact on parents and students. I have also listed websites where you can obtain a copy of IDEA 2004, House/Senate Conference Report, side-by-side comparisons of IDEA 1997 and IDEA 2004 and other comments regarding the changes.

**Early Intervening Services**

IDEA 2004 permits school districts to use up to 15% of the IDEA Part B funding to provide services to students who have not been identified as children with disabilities but who need "additional academic and behavioral support to succeed in a general education environment." Emphasis is to be on services in kindergarten through 3rd grade. Funds may be used for professional development as well as educational and behavioral services and support. The intent is to get services to children earlier without waiting for them to fail.

**Evaluations and Reevaluations**

IDEA 2004 prohibits reevaluations more frequently than once a year, unless the parent and school district agree.

**Informed Parental Consent Required Before Initiating IDEA Services**

If a parent refuses the provision of special education and related services based on the initial evaluation, the school district may not file due process to initiate special education and related services.

**Specific Learning Disabilities**

Before deciding that a student has a specific learning disability, current federal regulations require a finding by the IEP team of a severe discrepancy between achievement and intellectual ability in oral, listening or reading comprehension, written expression, basic reading skill, or mathematical calculation or reasoning. Under IDEA 2004, districts may, but are not required to, use the severe discrepancy model. In making an eligibility determination, a district may also use a "process that determines if the child responds to scientific, research-based intervention" as part of the evaluation procedures. Note that the statute appears to leave it to the local school district, not the state, to decide whether to continue to use the severe discrepancy model.

**Special Education and Related Services Based on Peer-Reviewed Research**

To the extent practicable, special education and related services included in a student's IEP are to be based on peer-reviewed research. This is consistent with the

No Child Left Behind Act which lists five essential components of reading instruction based on scientifically based research: phonemic awareness; phonics; vocabulary development; reading fluency and reading comprehension strategies.

### Elimination of Short-Term Objectives and Benchmarks from IEPs

Current law requires that each student's IEP contain measurable annual goals and short-term objectives or benchmarks. IDEA 2004 eliminates the requirement for benchmarks or short-term objectives except for those students who are taking alternate assessments aligned to alternate achievement standards. For all other disabled students, the IEP must contain a "statement of measurable annual goals, including academic and functional goals..." The elimination of short-term objectives and benchmarks may significantly diminish parents' ability to monitor and measure their child's progress.

### Measurement of Progress

The IEP must include a "description of how the child's progress toward meeting the annual goals...will be measured and when periodic reports on the progress the child is making toward meeting the annual goals... shall be provided."

### Transition Services

Prior law required that the IEP contain a statement of "transition service needs" starting at age 14. IDEA 2004 changes this to "not later than the first IEP to be in effect when the child is 16."

When a student's eligibility for services ends as a result of graduation or age, the student is entitled to a summary of his or her academic and functional performance, including "recommendations on how to assist the child in meeting the child's postsecondary goals."

IEP must include "appropriate measurable postsecondary goals based upon age appropriate transition assessments related to training, education, employment, and, where appropriate, independent living skills" and "the transition services (including courses of study) needed to assist the child in reaching these goals."

### Prohibition Against Mandatory Medication

School districts cannot require a child to take medication as a condition of attending school, receiving an evaluation under IDEA or receiving services under IDEA.

### Attendance at IEP meetings

A member of the IEP team is not required to attend an IEP meeting if the parent and district agree that the attendance of the member is not necessary because the member's area of curriculum or related service is not being modified or discussed at the meeting.

A member of the IEP team may be excused from attendance even when the meeting involves a modification to or discussion of the member's area of curriculum or related service if the parent and district consent and the member submits to the parent and the IEP team, written input into development of the IEP prior to the meeting.

A parent's agreement and consent for the above changes must be in writing.

### Changes to IEP After An Annual IEP Meeting

Parents and the school district may agree not to convene an IEP meeting to make changes needed after an annual IEP meeting is held. Instead the parent and school district may develop a written document to amend or modify the child's IEP.

EXHIBIT B
Page 3 of 9

Changes to an annual IEP may be made either by the entire team or by amending rather than redrafting the entire IEP as described above. Upon request, a parent must be given a revised copy of the IEP with the amendments incorporated.

Consolidating a reevaluation and other IEP meetings is encouraged.

The parent and the district may agree to use alternative means of meeting participation, such as videoconferences and conference calls.

Although a parent must consent in writing to who will attend the annual review IEP meeting, the statute does not explicitly require written consent to a parent's agreement to how changes are made after the annual review. Not explicitly requiring written consent may lead to confusion as to whether consent was received and is an area that needs clarification in the federal regulations.

**Multi-Year IEPs**

The Secretary of Education is allowed to approve demonstration proposals from up to 15 states. If selected, these demonstration projects allow adoption of IEPs that would remain in effect for up to three years. Parents must give informed consent to three-year IEPs. It is not known whether New Jersey will apply to be one of these 15 demonstration states.

**When Children Change Districts**

When a student changes districts within a state within the same academic year, the new school district must provide comparable services to those described in the previous IEP until it adopts the previous IEP or develops and implements a new one.

When a student moves to a new state within the same academic year, the new school district must also continue to offer comparable services until it conducts an evaluation of the child (if it determines an evaluation is necessary) and "develops a new IEP, if appropriate, that is consistent with Federal and State law."

The Statute is unclear as to what should happen if the family moves in the summer and whether that is considered the "same academic year."

**Discipline**

Changes in the discipline provisions could have a detrimental effect on children with Tourette Syndrome (TS).

For any violation of the code of student conduct, school personnel may remove the disabled child to an **appropriate interim alternative educational setting** for not more than ten **school days** to the extent such alternatives are applied to children without disabilities.

A district's code of student conduct is often quite comprehensive and could be interpreted to include what many would consider relatively insignificant conduct. Some district's codes include the range of discipline to be imposed which will help you determine if your child is being treated differently. Ask your school administrators for copies of the student code of conduct, if you don't already have it.

When a decision has been made to discipline the child, the school district must notify the parent no later than the date on which the decision to take disciplinary action is made.

If school personnel seek a change of placement of more than ten days, a manifestation determination must be held. Criteria for determining whether a student's

behavior is a manifestation of his/her disability has been changed. Conduct is a manifestation of the student's disability if conduct (a) was "caused by, or had a direct and substantial relationship to" child's disability; or was (b) a "direct result of [the district's] failure to implement the IEP."

If conduct was not a manifestation of a child's disability or is not a "direct result of 'the district's] failure to implement the IEP", the district may use the same disciplinary actions that apply to non-disabled students "in the same manner and for the same duration."

It is important that your child's IEP contain any needed modifications to or exceptions from the student code of conduct as well as any needed supports and services so that your child doesn't violate the code of student conduct in the first instance. For example, if your child's IEP states that a daily behavior sheet will be sent home and positive supports will be provided and this was not happening, arguably the district cannot discipline you child for behavior directly resulting from the failure to implement those IEP provisions.

If your child's conduct was "caused by or had a direct and substantial relationship" to his/her TS or other conditions such as obsessive compulsive disorder or attention deficit hyperactivity disorder, you should go to the manifestation determination meeting prepared to convince the IEP team of this relationship. You can bring reports from the experts treating your child which substantiate that the conduct in issue was "caused by or had a direct and substantial relationship" to your child's TS, OCD, ADHD or other conditions. The criteria has changed from IDEA 1997 and you want to make sure that your expert/s are aware of the new language.

If a determination is made that the conduct was not a manifestation of your child's TS, OCD, ADHD or other disabling condition,

then he/she can be disciplined in the same manner as students without disabilities except that the school district must provide educational services to your child after the initial ten school days. After the initial ten school days and while the suspension continues, your child must be placed in an interim alternative educational setting.

The interim alternative educational setting must enable your child "to continue to participate in the general education curriculum... and to progress toward meeting the goals set out in your child's IEP." In addition, your child must receive, as appropriate, a functional behavioral assessment, behavioral intervention services and modifications designed to address the behavioral violation so that it doesn't recur.

The interim setting is to be determined by the IEP team, including you as the parent.

School personnel may consider, on a case-by-case basis, any "unique circumstances" when deciding whether to order a change in placement for a child with a disability who violates a code of student conduct. It remains to be seen how this provision will be interpreted but arguably, any unique circumstances concerning your child, his/her disability or the circumstances surrounding the incident could be considered.

If your child inflict serious bodily injury on another person, they may be removed to an interim alternative educational setting for not more than **45 school days** without regard to whether the behavior was a manifestation of your child's disability. This is in addition to IDEA 97, which allowed removal for drugs and weapons for 45 days.

School districts may also request a hearing to change your child's placement when it believes that maintaining the current placement is substantially likely to result in

XHIBIT _B_
nge _5_ of _9_

injury to the child or others. In deciding whether to grant the district's request, IDEA 2004 no longer explicitly requires the hearing officer to consider whether the IEP was appropriate or was being implemented.

If you appeal from the manifestation determination, your child will remain in the interim alternative setting pending the decision of the hearing officer or until the expiration of the 45 school day time limit. In other words, the stay put does not apply when a parent appeals a manifestation determination.

The hearing for an appeal from a manifestation determination or of a district's request to change a placement because the child allegedly poses a substantial risk of harm to others is to be expedited and occur within 20 school days of the date the hearing is requested and shall result in a determination within 10 school days after the hearing.

**Protections For Children Not Yet Eligible for Special Education and Related Services**

IDEA 1997 set forth those circumstances under which children who had not yet been identified as eligible for special education were still entitled to IDEA's protections regarding discipline. Some changes were made in IDEA 2004.

Under previous law, a school district was deemed to have knowledge that a child has a disability if the "behavior or performance of the child demonstrates the need for such services." This provision was deleted. Given this deletion, it is even more important that parents who believe their child may have a disability and needs special education, put their concerns in <u>writing</u> to supervisory or administrative personnel or to the child's teacher. Verbal concerns, even ones frequently expressed, are not sufficient!

IDEA 2004 also added a new exception providing that a school district is not deemed to have knowledge that a child has a disability if "the parent of the child has not allowed an evaluation of the child...or has refused services...or the child has been evaluated and it was determined that the child was not a child with a disability..."

**Two-Year Timeline for Filing Due Process Petition**

Parents must request an impartial due process hearing within two years of the date the parent knew or should have known about the action that forms the basis of the complaint. If the state already has an explicit timeline for presenting complaints, it may use that timeline. This two-year limitation does not apply to a parent if the parent was prevented from requesting the hearing due to specific misrepresentations by the school district that it had resolved the problem forming the basis of the complaint or the district withheld information from the parent that IDEA 2004 requires be provided to the parent.

**Content of Due Process Complaint Notice**

Current IDEA requires parents or their attorney to file a due process notice which includes child's name, address, and school, description of and facts related to the problem and proposed resolution of the problem. IDEA 2004 requires parties to comply with these notice requirements plus, if the petition involves a homeless child, to include available contact information and the school the child is attending. A due process hearing may not take place until the due process complaint notice is filed.

EXHIBIT B
Page 6 of 9

A due process complaint notice is deemed sufficient unless the receiving party notifies the hearing officer within 15 days of receiving the complaint and the other party in writing that the receiving party believes the notice is insufficient. Within five days of receipt of notification, the hearing officer must make a determination as to whether the notice meets the requirements.

If the school district has not sent prior written notice to parents on subject/s in the complaint notice, it must send written notice within ten days of receiving the complaint, which includes (a) why the agency proposed or refused to take action raised in complaint; (b) other options considered and why rejected; (c) each evaluation procedure, assessment, record or report the agency used as the basis for the proposed or refused action; and (d) a description of the factors that are relevant to the agency's proposal or refusal.

**Parent Must Respond to School District's Due Process Petition Notice**

A parent must specifically respond to the issues raised in a due process complaint filed by the school district within ten days of receiving it.

**Amendments to Due Process Complaint Notice**

Amendments to the due process complaint notice require the other party's consent in writing or permission of the hearing officer, except that the hearing officer may only grant such permission not later than five days before the hearing occurs. The timelines, including the 30 days for the resolution session described below, recommence when an amended notice is filed.

Parents may, however, file new due process petitions on issues not raised in their first petition.

**Resolution Session**

A due process petition filed by a parent cannot take place until a district is given 30 days to try to resolve the issues raised by the parent in the petition. Within 15 days of receiving notice of the parents' complaint, a district is to convene a meeting with parents and the relevant members of the IEP team who have specific knowledge of the facts presented in the complaint.

The resolution meeting must include a district representative who has decision-making authority and may not include the district's attorney unless the parent is accompanied by an attorney. If the district does not resolve the issue/s to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may take place. If an agreement is reached in the resolution meeting, it must be in writing and signed by both parties and is enforceable in any state or federal court. A party may void the agreement within three business days.

The 30-day resolution session can be waived only by written agreement of the parties or by an agreement to use mediation instead.

**Procedural Violations**

Generally an administrative law judge's (ALJ) decision must be based on substantive grounds, i.e. whether the child received a free appropriate public education (FAPE). When a parent contends that a district committed procedural violations, an ALJ may find that the procedural violations deprived the child of FAPE only when the procedural violations 1) impeded the child's right to FAPE by significantly impeding the parents'

opportunity to participate in the decision-making process regarding the provision of FAPE, or 2) caused a deprivation of educational benefits. The ALJ can still order the district to comply with IDEA's procedural requirements.

### 90 Day Timeline for Appealing From Due Process Decision

An appeal from a due process hearing decision must be filed within 90 days from the date of the decision of the hearing officer unless the state has an explicit time limitation for bringing such action. New Jersey does not have a statute setting an explicit time limitation.

### Award of Attorney Fees

Attorney fees will not be awarded for the time spent in attending the mandatory resolution session.

IDEA 2004 has incorporated civil rights attorney fees law that has been established for many years as well as Federal Rule Civil Procedure 11 concerning frivolous actions. IDEA 2004 now explicitly states that a prevailing school district or state department of education can obtain an award of attorney fees as part of the cost against the attorney of a parent if the attorney has filed a complaint or cause of action that is frivolous, unreasonable, or without foundation or when the attorney continues to litigate after the litigation clearly became frivolous, unreasonable or without foundation. Similar provisions already applied to special education complaints brought in state and federal court, and all IDEA 2004 does is to explicitly apply these provisions to administrative actions.

A court may award attorney fees as part of the costs to a school district and directly against the parent only if the parent's complaint or subsequent cause of action was presented for any improper purpose such as to harass, to cause unnecessary delay or to needlessly increase the cost of litigation.

In addition to previous provisions allowing for a reduction in the amount of attorney fees when the parent unreasonably protracted the final resolution of the controversy, the new law also allows a court to reduce attorney fees if the parent's attorney unreasonably protracts the final resolution of the controversy.

### Early Intervention Services under Part C of IDEA 2004

States have the option of adopting policies that would permit parents of children receiving early intervention services to extend these services until the child is eligible to enter kindergarten. Under current law, these children transition into a preschool program under Part B of IDEA when they reach three years of age.

Parents who choose this option must give informed written consent. It is important to note that if the parent elects to continue with early intervention services, the child is not entitled to FAPE as he/she would be under IDEA's preschool programs. In addition, parents who chose to continue early intervention services after their child turns three may be charged fees for some of the services.

### Next Steps

All of the changes discussed here go into effect on July 1, 2005. It is expected that new draft federal regulations will be issued for comment in the next few months.

At some point, and whether this will be before or after the federal regulations are issued is unknown, the New Jersey Department of Education will issue new state

regulations. Even where IDEA 2004 offers less protection, New Jersey can choose to continue current state regulations. Thus, when New Jersey regulations are proposed, it is important that your voice be heard.

**Resources**

The Conference Report for IDEA 2004 can be found at http://thomas.loc.gov. Click on "Committee Report," click on 108th Congress, then click on "Conference Report" and put in "Report No. 108-779." This will give you the full text of IDEA 2004 with the conference report.

Jess Butler with the Council of Parent Attorneys and Advocates, Inc. ("COPAA") has prepared a full-text comparison of IDEA 2004 and IDEA '97. This very useful document can be found at www.copaa.org.

Congressional Research Service (CRS) has prepared a comprehensive 43-page document entitled "Individuals with Disabilities Education Act : Analysis of Changes Made by P.L. 108-446." This is available on a number of websites, including www.cec.org and www.asha.org.

Wrightslaw discusses changes to five key sections of IDEA and has prepared several articles, including one on the impact of changes to the attorney fees provision. These can be found at www.wrightslaw.com and clicking on "IDEA 2004."

The Learning Disabilities Association of America has prepared both a summary of key provisions in IDEA 2004 (two pages) as well as a more detailed side-by-side comparison of key provisions: www.LDAAmerica.org.

The Council for Exceptional Children ("CED") has prepared a summary of the law and their recommendations: http://www.cec.sped.org

The National Center of Secondary Education and Transition has a side-by-side chart comparing key provisions on transition in IDEA 1997 compared to IDEA 2004: www.ncset.org.

The American Speech Hearing Association (ASHA) analyzes the implications of IDEA's elimination of the requirement that state education personnel standards meet the highest requirement for a profession or discipline in the state: www.asha.org/about/legislation-advocacy

Cole, Schotz, Meisel, Forman & Leonard, P.A.
Court Plaza North
25 Main Street
Hackensack, New Jersey  07601
(201) 489-3000
Facsimile: (201) 489-1536
rspar@coleschotz.com

EXHIBIT B
Page 9 of 9